## BARNARD FOWLER *versus* SYLVANUS HOLBROOK

The *St.* 1829, *c.* 122, provides, in cases of damage done to lands by flowing, that the jury shall assess the gross damages, and that the land-owner may elect to receive the sum so assessed, instead of the sum assessed for the yearly damage, and may have an action of debt to recover the same, provided he shall give notice of such election within three months ; and that " if the owner or owners of such mill shall refuse or neglect, for the space of three months after the time of notice given as aforesaid, to pay or satisfactorily secure to the owner of said lands the estimated gross sum of money aforesaid, with the lawful interest thereon from the finding of such verdict, he or they shall be for ever precluded from all benefits of said verdict, as well as from all rights in regard to said lands." In an action under this statute it appeared, that the mill-owner had, after receiving such notice from the land-owner, continued to keep up his dam and to flow the land. It was *held*, that such preclusion of the mill-owner from the benefits of the verdict was to be considered as a cumulative remedy for the land-owner, and that the mill-owner could not by merely neglecting for the space of three months after such notice, to pay or secure the gross damages assessed, deprive the land-owner of his remedy by an action of debt for the same ; that if the mill-owner may elect to repudiate the verdict and relinquish the right of flowing, he must, in such case, remove the dam, and give reasonable notice of such election ; but that if the owner of the land receive the amount of the gross damages of the mill-owner after the expiration of three months from such notice, he thereby waives all objections on the ground that it was not paid before. [See Revised Stat. *c.* 116, § 21.]

DEBT on a judgment. The declaration averred, that the plaintiff, in June 1833, entered a complaint in the Court of Common Pleas, against the defendant, setting forth that certain lands of the plaintiff had been flowed by reason of a dam of·the defendant ; that thereupon, by virtue of *St.* 1829, *c.* 122, a warrant was issued by that court for empannelling a jury to assess such a sum in gross as should be a just and reasonable compensation for all the damages done or to be done to the plaintiff by

means of such dam ; that on October 18, 1833, the jury as-      Fowler
sessed the damages in gross, at the sum of $1750 ; that in      Holbrook.
June 1834, this verdict was accepted by the court, and the
plaintiff then elected to receive such damages in gross, instead
of the yearly damages, which were also assessed in the ver-
dict ; that thereupon it was considered by that court, that the
plaintiff should recover of the defendant the sum of $1750 ;
that the plaintiff, on July 3, 1834, within the term of three
months from the time of the acceptance of the verdict by the
court, gave notice in writing of such election ; and that there-
by an action had accrued to the plaintiff to demand and receive
of the defendant the sum of $1750, with interest from the
finding of the verdict.

The defendant pleaded in bar, that for more than three
months from the day when the plaintiff gave him notice in
writing of his election to receive the sum of $1750, and ever
since, he had refused to pay or satisfactorily secure to the
plaintiff such sum.

To this plea the plaintiff demurred.  The defendant also
pleaded, that by his neglect and refusal to pay or satisfactorily
secure to the plaintiff the sum of $1750, he had abandoned all
right to flow the lands of the plaintiff, and for ever precluded
himself from all the benefits of the verdict, and from all rights
in regard to the lands of the plaintiff, which he might otherwise
have had by virtue of the statutes mentioned in the declaration,
and of the complaint and the proceedings thereon.

To this plea the plaintiff replied, that from the time of filing
the complaint and ever since, the defendant had maintained
the dam and had thereby kept up a head of water to the same
extent and in the same manner, as by the verdict he was to
have a right of keeping up the same.

To this replication the defendant demurred.

J. *Davis* and *Washburn*, for the plaintiff, cited *Stowell* v.      Oct. 1st
*Flagg*, 11 Mass. R. 364 ; *Commonwealth* v. *Ellis*, 11 Mass.
R. 462 ; *Holmes* v. *Moore*, 5 Pick. 257 ; 1 Dane's Abr.
159,

*Merrick*, for the defendant.

PUTNAM J. afterward drew up the opinion of the Court.
By the *St.* 1795, *c.* 74, § 2, the jury is required to assess the

Fowler
*v.*
Holbrook.

yearly damages done to a complainant by a mill-owner in flow·ing the land. The operation of this provision was to enable the mill-owner to take the capital of the land-owner against his consent, on paying only the annual damages. It was in the nature of a forced loan. But by the *St.* 1829, c. 122, § 1, the jury is required (in addition to the duties imposed upon them by the former act) to assess the gross amount of the damage which the complainant sustains by having his lands flowed by the mill-owner. And by the second section the land-owner has his election to take the yearly or the gross damages. This act, without doubt, was intended to give to the owner of the land a more advantageous remedy than he had before, for the invasion made upon his property by the owner of the mill. The second section provides, that the owners of lands so flowed as aforesaid, " may elect and shall be entitled to receive the estimated sum of money in gross aforesaid, instead of the yearly damages returned by the verdict of the jury, and may have an action of debt to recover the same ; provided he shall give notice in writing of such election to the owner or owners or occupants of such mill, within three months from the acceptance of such verdict by the court ; and if the owner or owners of such mill shall refuse or neglect, for the space of three months after the time of notice given as aforesaid, to pay or satisfactorily secure to the owner of said lands the estimated gross sum of money aforesaid, with the lawful interest thereon, from the finding of such verdict, he or they shall be for ever precluded from all benefits of said verdict, as well as from all rights in regard to said lands, which he or they may or might have by virtue of the acts to which this is an addition."

It is contended for the mill-owner, in effect, that this statute operates as an offer by the owner of the land to sell it to the mill-owner, if he will take it, and that he has a right to refuse the offer, and submit himself to the liabilities imposed by the common law, and that by refusing and neglecting to pay the gross damages within three months from the notice of the plaintiff's election, he has taken away the plaintiff's remedy by an action of debt for the same.

Such a construction of the act would not seem to be rea-

sonable. The owner of the land is forced to sell it. One would think if there were an election to be given of remedies, it should be given to him who sustained, and not to him who inflicted the injury. Now the first part of the second section gives to the owner of the land a right to the estimated gross damages, and an action of debt to recover them. Did the last part of that section take away that right, if the mill-owner should choose rather to take the chance of damages at the common law, than to abide by the sum found by the jury under the statute? The defendant claims to waive any benefit of the statute. If the claim be allowed, then the defendant, at the common law, must stand as a trespasser or wrong doer. Now it may be perhaps, that this is a forced sale upon a condition that the mill-owner will take it at the appraisement. If so, and he takes it, he is answerable for the estimated price. It may be, that the mill-owner had an election to take it or not, within a reasonable time after notice. If he concluded not to take it, he should have removed the obstruction, and so restored the land to the plaintiff as it was before it was overflowed; and he should have given reasonable notice of such his election to abate the obstruction rather than pay the estimated damages.

Now the defendant has done no such thing, but rather the contrary; he has refused and neglected to pay the damages, and he has nevertheless continued his dam and kept the plaintiff's land under water ever since. He has thus, in legal contemplation, taken and accepted the right to flow at the price estimated by the jury, and cannot under these circumstances be permitted to plead to the contrary.

The preclusion of the mill-owner from all benefit of the verdict, as well as from all rights in regard to the land, under the acts for the regulation of mills, and so leaving him answerable as at the common law, was not, as we think, intended to deprive the owner of the land of his action of debt; but it was to be considered as a cumulative remedy. He might have his action of debt for the estimated damages, or his action for the nuisance as at the common law, at his election.

But it has been suggested, whether if the mill-owner should pay *after* the expiration of the three months, &c., he would

not, according to the statute, lose all the benefit of the act, and lose his money also. We think not; and that the complainant, or owner of the land, who should receive the amount of the estimated gross damage after the expiration of the three months, &c., would, in law, be considered as having waived all objections which might have been made on the ground that it had not been paid before.

We are all of opinion, that the pleas in bar are insufficient, and that the judgment should be rendered for the complainant